IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

FILED
U.S. DIST. COURT

201 JUL 24 P 3: 47

R. Cox

_____

TRACY MILLER,                          :

     Plaintiff,                     :

     vs.                            :      CIVIL ACTION NO.: CV698-109

                               :

RONALD KING; JOHNNY SIKES;             :
THE GEORGIA DEPARTMENT OF              :
CORRECTIONS, and THE STATE             :
OF GEORGIA,                            :
                                       :
     Defendants.                    :

## O R D E R

Plaintiff, an inmate currently incarcerated at Georgia State Prison in Reidsville,

Georgia, filed an action pursuant to 42 U.S.C. § 1983 on August 4, 1998, contesting

certain conditions of his confinement. After a somewhat lengthy procedural history,[1] the

---

[1] Plaintiff's original complaint stated claims against Ronald King and Wayne Garner, alleging the violation of his due process and Eighth Amendment rights. (Doc. No. 2). Plaintiff subsequently amended his complaint to include deliberate indifference and retaliation claims against Former GSP Warden Johnny Sikes, and a claim under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 ("ADA"). (Doc. No. 23). On August 4, 1999, Defendants filed a Motion for Summary Judgment, and on February 25, 2000, the Court granted summary judgment to Defendants on the deliberate indifference claim against Sikes and the due process claim against Garner. (Doc. No. 94). Defendants then filed a supplemental Motion for Summary Judgment, and on January 29, 2002, the Court granted summary judgment to King, the State of Georgia, and the Georgia Department of Corrections on Plaintiff's ADA claims. (Doc. No. 135). A jury trial was held on the remaining claims of retaliation and due process violations against Defendant King. The jury returned a verdict in favor of Defendant King (Doc. No. 156), and Plaintiff's Motion for a New Trial and Motion for Judgment as a Matter of Law were denied on June 6, 2002. (Doc. No. 168). Plaintiff appealed the Court's June 6, 2002 Order, and on May 17, 2006, the Eleventh Circuit affirmed in part, and vacated and remanded in part as follows: (1) vacated this Court's February 25, 2000 Order to the extent that it granted summary judgment on Plaintiff's Eighth Amendment claims against Defendant Sikes individually and in his official capacity; (2) vacated this Court's January 29, 2002 Order to the extent that it granted summary judgment on Plaintiff's ADA claims against Defendant Sikes in his official capacity, the State of Georgia, and the Georgia Department of Corrections; and (3) remanded the case to this Court with instructions to permit Plaintiff to amend his complaint and for further proceedings consistent with the United States Supreme Court's decision in United States v. Georgia, 546 U.S. 151, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006).

claims which remain pending pursuant to the May 17, 2006 judgment of the Eleventh Circuit are (1) an Eighth Amendment claim against Defendant Sikes in his individual and official capacities, and (2) ADA claims against Defendant Sikes in his official capacity, the State of Georgia, and the Georgia Department of Corrections. (Doc. No. 190). Per the instructions of Eleventh Circuit, Plaintiff has amended his complaint to restate his allegations, and also seeks to add several new Defendants and claims. (Doc. No. 198). Defendants have filed a Motion to Dismiss (Doc. No. 207), Plaintiff has filed a Response (Doc. No. 211), and Defendants have filed a Reply (Doc. No. 214). For the following reasons, Defendants' Motion is **GRANTED** in part and **DENIED** in part.

## STATEMENT OF THE CASE

Plaintiff asserts that Defendant Sikes deprived him of medical care, and that Sikes, the State of Georgia, and the Georgia Department of Corrections are responsible for failing to provide him with reasonable accommodations for his disability and confinement to a wheelchair. (Doc. No. 38, pp. 3-4). In his Amended Complaint, Plaintiff sets forth Eighth Amendment claims based upon the alleged deprivation of his serious medical needs as a wheelchair-bound paraplegic, and upon the alleged deficient accommodation of his disability. (Doc. No. 198, p. 15). He also asserts that his Fourteenth Amendment right to equal protection of the laws has been violated, contending that "[w]heelchair-bound inmates . . . are not provided the same privileges as similarly-situated able-bodied inmates." (Id. at 17). Plaintiff additionally contends that Defendants have taken action against him in retaliation for his having filed complaints and lawsuits, and have interfered with his access to the courts, all in violation of his First Amendment rights. (Id. at 18-19). Plaintiff asserts that he has been

AO 72A
(Rev. 8/82)

excluded from receiving adequate medical care and accessible facilities and services by reason of his disability, in violation of Section 504 of the Rehabilitation Act. (Id. at 19-21). Finally, Plaintiff asserts violations of Title II of the ADA by acts of discrimination and retaliation. (Id. at 21-23). Plaintiff names nine new individuals and two new institutions as defendants.

Defendants allege that Plaintiff has failed to exhaust his administrative remedies as to certain of his claims as required by the Prison Litigation Reform Act (PLRA). (Doc. No. 208, pp. 5-8). Defendants further allege that the ADA and RA claims must be dismissed to the extent that Plaintiff asserts them against individuals who are not subject to liability under these Acts. (Id. at 8). Defendants assert that the § 1983 claims against the Georgia Department of Corrections, Augusta State Medical Prison, and the Defendants named in their official capacity, must be dismissed as these are not "persons" within the meaning of § 1983. (Id. at 9). Defendants further contend that Plaintiff's First Amendment claims fail on the merits (Id. at 10-14), that the § 1983 claims are barred by res judicata (Id. at 14-17), that the ADA claims must be dismissed for lack of an underlying constitutional violation (Id. at 17-18), and that Plaintiff has failed to show a physical injury as required by the PLRA (Id. at 18-22). Finally, Defendants assert that they are protected by qualified immunity (Id. at 22-24), that Plaintiff cannot proceed on what is merely a respondeat superior theory of liability on his § 1983 claims (Id. at 24-28), that Plaintiff's claims against certain Defendants are barred by the statute of limitations (Id. at 28-29), and that Plaintiff's complaint should be dismissed for failure to follow a court order (Id. at 29-32).

## STANDARD OF DETERMINATION

Defendants have filed their motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support of three of their enumerations of error, however, Defendants submit exhibits requesting that the Court consider this evidence in determining these issues. Plaintiff requests that Defendants' Motion, insofar as it pertains to the issues of exhaustion, actual injury resulting from the alleged access to courts violation, and res judicata, be addressed under the summary judgment standard of Rule 56.

FED. R. CIV. P. 12(b) provides: "If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Pursuant to Rule 56, a court must give the parties ten days notice that it is converting the moving parties' motion to dismiss into a motion for summary judgment. Trustmark Ins. Co. v. ESLU, Inc., 299 F.3d 1265, 1267 (11th Cir. 2002).

Upon review of the parties' pleadings and documentation in support thereof, the Court converts Defendants' Motion to Dismiss into a Motion for Summary Judgment, but only as it pertains to three issues: (1) whether Plaintiff exhausted his administrative remedies as required by the PLRA; (2) whether Plaintiff can show "actual injury" resulting from his access to courts claim; and (3) whether Plaintiff's claims are barred by res judicata. Accordingly, the parties shall have twenty (20) days from the receipt of this Order to file any desired additional documents on these issues.

The remainder of Defendants' enumerations of error are herein addressed under the 12(b)(6) standard. A motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should not be granted "'unless it appears beyond doubt that plaintiff can prove no set of facts which would entitle him to relief.'" Bradberry v. Pinellas County, 789 F.2d 1513, 1515 (11th Cir. 1986) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L. Ed. 2d 80 (1957)); accord Martinez v. American Airlines, Inc., 74 F.3d 247, 248 (11th Cir. 1996). In making this determination, a court must construe the complaint in a light most favorable to the plaintiff. Christopher v. Harbury, 536 U.S. 403, 406, 122 S. Ct. 2179, 2182, 153 L. Ed. 2d 413 (2002). Furthermore, all facts alleged by the plaintiff must be accepted as true. Christopher, 536 U.S. at 406, 122 S. Ct. at 2182. When evaluating a motion to dismiss, the issue is not whether a plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." Little v. City of North Miami, 805 F.2d 962, 965 (11th Cir. 1986). The threshold is "'exceedingly low'" for a complaint to survive a motion to dismiss. Ancata v. Prison Health Services, Inc., 769 F.2d 700, 703 (11th Cir. 1985) (quoting Quality Foods de Centro America, S.A. v. America Agribusiness Devel., 711 F.2d 989, 995 (11th Cir. 1983)).

## DISCUSSION AND CITATION TO AUTHORITY

I.      **Proper ADA and RA Defendants**

Defendants contend that Plaintiff has brought claims against individual Defendants under the ADA and the RA, and that these claims must be dismissed because there is no individual liability under these acts. Plaintiff asserts that regardless of whether individual liability is actually available under the ADA and the RA, he has

asserted no ADA or RA claims for damages against individual defendants.

Because Plaintiff asserts that his only ADA and RA claims for damages are against the institutions themselves, there is no issue in dispute here. Though Defendants correctly note that Plaintiff's Amended Complaint could be clearer on this point, suffice it to say that only Plaintiff's ADA and RA claims for damages against the institutions and claims for injunctive relief against the institutions and the Defendants in their official capacities are being pursued. Accordingly, to the extent Plaintiff's claims can be read to state any ADA or RA claims against any individual Defendants in their individual capacities, Defendants' motion is **GRANTED** and these claims are **DISMISSED**.

## II. Proper § 1983 Defendants

Defendants contend that Plaintiff's claims brought pursuant to 42 U.S.C. § 1983 against the Georgia Department of Corrections, Augusta State Medical Prison, and Georgia State Prison must be dismissed as these Defendants are not "persons" amenable to suit within the meaning of the statute. Plaintiff asserts that there are no § 1983 claims brought against these Defendants, who are effectively the State or arms of the State, and that instead these claims are properly asserted only against the individual Defendants. Again, Plaintiff contends that only claims for injunctive relief under § 1983 have been asserted against the individuals in their official capacities, and claims for damages are asserted against the individuals in only their individual capacities.

In enacting 42 U.S.C. § 1983, Congress did not intend to abrogate "well-established immunities or defenses" under the common law or the Eleventh Amendment. Will v. Michigan Dep't of State Police, 491 U.S. 58, 67, 109 S. Ct. 2304,

2310, 105 L. Ed. 2d 45 (1989). Thus, as both parties have noted, states are not "persons" within the meaning of § 1983. Id. at 64, 109 S. Ct. at 2308. Additionally, a lawsuit against a state official in his or her official capacity is no different from a suit against the state itself and such defendants are immune in that capacity. Id. at 71, 109 S. Ct. at 2312. Because the State of Georgia would be the real party in interest in a suit against the individual Defendants for damages in their official capacities, the Eleventh Amendment prohibits such claims. Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). However, "a state official in his or her official capacity, when sued for *injunctive* relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" Will, 491 U.S. at 71 n.10, 109 S. Ct. at 2312.

Accordingly, Plaintiff's appropriate § 1983 relief is against the individual Defendants in their individual capacities for monetary damages and against them in their official capacities for injunctive relief. To the extent that Plaintiff's claims can be read to assert any § 1983 claims against the state Defendants, or against the individual Defendants in their official capacities for monetary damages, Defendants' motion is **GRANTED** and these claims are **DISMISSED**.

III.    **The ADA Claims and United States v. Georgia**

Defendants appear to contend that in light of the Supreme Court's decision in United States v. Georgia, 546 U.S. 151, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006), Plaintiff's ADA claims which are based on conduct that is not violative of the constitution must be dismissed. This is so, according to Defendants, because since the Supreme Court in United States v. Georgia held that Title II does validly abrogate state sovereign

AO 72A
(Rev. 8/82)

immunity for damages against the State for conduct that does violate the constitution, "implicitly, Title II does not validly abrogate Eleventh Amendment immunity where the claim is for conduct that does not violate the [constitution]." (Doc. No. 208, p. 18). Plaintiff asserts that this issue was actually left open by the Supreme Court's decision in United States v. Georgia. (Doc. No. 211, p. 15-16).

In United States v. Georgia, the Supreme Court held that Title II of the ADA validly abrogates state sovereign immunity "insofar as [it] creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment . . . ." 546 U.S. at ___, 126 S. Ct. at 882. The Court acknowledged the disagreement among Justices as to the scope of Congress's "prophylactic" enforcement powers, or legislation that proscribes facially constitutional conduct with the intent of preventing unconstitutional conduct. Instead of commenting further on the issue of whether principles of sovereign immunity would allow facially constitutional conduct to form the basis of a Title II action though, the Court instructed the lower courts on remand to decide "insofar as [ ] misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." 546 U.S. at ___, 126 S. Ct. at 882.

Clearly, it has been explicitly left to the lower courts to determine whether it is a valid abrogation of state sovereign immunity under Congress's § 5 enforcement power to proscribe conduct that violates Title II of the ADA but does not independently violate the Constitution itself. Accordingly, to the extent that Defendants seek to assert that Plaintiff's ADA claims are based on conduct which is not a proper abrogation of state

sovereign immunity, the Court would grant Plaintiff's request to brief this issue separately. Accordingly, Defendants are granted leave to file an additional Motion to Dismiss on this issue should they so choose, and Plaintiff shall then have the opportunity to respond. Defendants' Motion is **DENIED** as it pertains to this issue at this time.

## IV.    Physical Injury

Defendants assert that because Plaintiff alleges only an emotional and mental but not a physical injury, his complaint must be dismissed under the PLRA. Conversely, Plaintiff asserts that he has "clearly and repeatedly" alleged physical injury, and that regardless, the PLRA only requires that "*in order to state a claim for mental or emotional injury,* there must be a claim for an underlying physical injury. 42 U.S.C. § 1997e(e). It does not bar a claim for damages *not* premised on mental or emotional injury. . . . Likewise, it does not bar claims for injunctive and declaratory relief." (Doc. No. 211, p. 17).

The Prison Litigation Reform Act provides in part that

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). The purpose of this statute is "to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (citing Harris v. Garner, 216 F.3d 970, 976-79 (11th Cir. 2000)). "Tracking the language of [this] statute, § 1997e(e) applies only to lawsuits involving (1)

AO 72A
(Rev. 8/82)

Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody." Id. at 532.

The Eleventh Circuit has yet to decide whether Section 1997e(e) precludes claims for nominal and punitive damages along with compensatory damages. Boxer X v. Donald, 169 Fed. Appx. 555, 558-59, 558 n.1 (11th Cir. 2006). Nominal damages are appropriate in a Section 1983 case if the plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages. Carey v. Piphus, 435 U.S. 247, 266, 98 S. Ct. 1042, 1053-1054, 55 L. Ed. 2d 252 (1978). Punitive damages may be imposed under Section 1983 with the specific purpose of deterring or punishing violations of constitutional rights. Id. at 257 n.11, 1049. Although the Eleventh Circuit has yet to decide whether Section 1997e(e) precludes a prisoner from seeking nominal or punitive damages, the Court of Appeals has noted that the Second, Third, Seventh, Ninth and Tenth Circuits have concluded that Section 1997e(e) does not preclude a prisoner from seeking nominal damages, Boxer X v. Donald, 169 Fed. Appx. at 558-59, and that circuits elsewhere are split on the issue of punitive damages under Section 1997e(e). Id. at 558 n.1.

Defendants assert that Plaintiff has alleged no physical injury and thus his claims are barred. However, as Plaintiff notes, he has clearly claimed numerous physical injuries resulting from certain alleged actions or inactions of Defendants. Furthermore, the absence of a physical injury means only that Plaintiff cannot recover compensatory damages for any mental or emotional injury; it merely limits the nature of Plaintiff's damages. Id. at 558. Plaintiff is not precluded from bringing claims for other types of

monetary relief without a showing of physical injury. Id. Plaintiff is also not precluded from asserting claims for injunctive and declaratory relief. Harris v Garner, 190 F.3d 1279, 1288 (11th Cir. 1999). Accordingly, that part of Defendants' Motion seeking dismissal of Plaintiff's claims based on the absence of physical injury is **DENIED**.

V.     **Qualified Immunity**

Defendants assert that Plaintiff's claims against the individual Defendants are barred by the doctrine of qualified immunity because they have violated no clearly established constitutional law. Plaintiff asserts that it is, in fact, clearly established that deliberate indifference to serious medical needs, including the deprivation of adequate assistance to those in wheelchairs, is a violation of the Eighth Amendment. Plaintiff further asserts that it is clearly established that arbitrary discrimination is a Fourteenth Amendment violation and that denial of access to courts and retaliation are First Amendment violations.

Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities, so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515, 153 L. Ed. 2d 666 (2002)). A government official must first prove that he was acting within his discretionary authority. Id. at 1234. "A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F. 3d 1176, 1185 n.17 (11th Cir. 1994). Once the government

official has shown that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not warranted. Gonzalez, 325 F.3d at 1234.

The Supreme Court has established a two-part test to determine the applicability of qualified immunity. First, the court must determine whether plaintiff's allegations, taken as true, establish a constitutional violation. Hope, 536 U.S. at 736, 122 S. Ct. at 2513. If, under the plaintiff's allegations, the defendants would have violated a constitutional right, the next step is to ask whether the right was one that was clearly established under the law. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001); Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202, 121 S. Ct. at 2156.

Defendants' assertion of the qualified immunity defense must fail. Defendants' Brief does not elaborate as to what particular claims or factual allegations they allege were not "clearly established," but their Reply to Plaintiff's Response asserts that:

> The Plaintiff admits that he has received medical treatment (Doc. 208 ¶ 16) and he admits that he has litigated the two nonfrivolous prior cases (Doc. 208, Exhibits "D"-"I") to judgment. These two issues are the cruxed [sic] of Plaintiff's entire complaint. Every issue in Miller's complaint stems from Defendants' alleged failure to give him proper medical treatment and alleged denial of his First Amendment rights. Miller admits that he received both while incarcerated at GSP and ASMP.

Defendants appear to contend that Plaintiff's allegations include admissions that he received proper medical treatment and that he has been able to litigate two prior cases

and thus has not been denied access to the courts. Under Defendants' theory, therefore, the allegations would not even establish a constitutional violation, much less one that would have been clearly established so as to place them on notice. This theory, however, is without merit.

Defendants refer to a portion of Plaintiff's Amended Complaint[2] wherein he details the treatment he has been prescribed by prison physicians:

> To treat his condition, prison doctors have prescribed Miller physical therapy to avoid atrophy of his left leg; that he receive an orthopedic brace and shoe for his left leg; that he utilize leg supports for his wheelchair; and that he use urine catheters to avoid incontinence problems. He has periodically required spinal surgery to correct ongoing back problems.

(Doc. No. 198, ¶16). From this, Defendants conclude that "Plaintiff admits that he has received . . . proper medical treatment . . ." and thus that "there is no clearly established law addressing these facts that would give reasonable officials fair notice that their actions are violating Plaintiff's constitutional rights." (Doc. No. 214, p. 10). Regarding the First Amendment claims, Defendants assert that Plaintiff has litigated to judgment two prior cases, and thus he "admits" that he "received" his "First Amendment rights . . . while incarcerated at GSP and ASMP." (Doc. No. 214, p. 10). The Court certainly agrees that no clearly established law proscribes "proper medical treatment" under the Eighth Amendment, and that no precedent establishes a First Amendment violation where an inmate is *not* denied his access to the courts or admits being afforded his rights under the First Amendment. Defendants' reasoning appears to be that Plaintiff admits that his rights were not violated, and that therefore the facts pled establish no constitutional violation and they are thus entitled to qualified immunity. Certainly,

---

[2] Defendants cite "Doc. 208 ¶ 16." However, Document 208 is actually their own Brief in Support of their Motion to Dismiss, and contains no paragraph numbers. The Court presumes that Defendants mean to refer to Paragraph 16 of Plaintiff's Amended Complaint, Document Number 198.

however, Defendants cannot have failed to notice that throughout his Amended Complaint, Plaintiff alleges facts that would establish constitutional violations. In Paragraph 16, Plaintiff does not "admit" to receiving proper medical treatment as Defendants allege. Instead, he describes the treatment that prison doctors have *prescribed*, and in later paragraphs goes on to allege that this prescribed treatment has been *denied* by GSP and its officials, an allegation which, taken as true, could establish an Eighth Amendment violation. See Doc. No. 198, ¶ 33 (alleging the denial of physical therapy services and resulting atrophy and pain), ¶ 34 (alleging confiscation of prescribed leg brace and supports), ¶ 35 (alleging regular denial of urine catheters and resulting urinary and kidney infections). Furthermore, Plaintiff has alleged facts that, taken as true, would establish a violation of the First Amendment. Plaintiff alleges confiscation of his legal material, delays in the transmission of legal mail, and denial of access to the law library, and asserts that these actions have interfered with his ability to remedy his allegedly unconstitutional prison conditions and to file a successful habeas petition. (Doc. No. 198, ¶¶ 54, 55, 77, Doc. No. 211, p. 11). The fact that Plaintiff has litigated prior cases is certainly not so dispositive as to warrant dismissal of the claim. Clearly, if all Plaintiff's complaint did was "admit" that he was afforded his constitutional rights, Defendants would be entitled to qualified immunity and there would be nothing left to discuss. Surely, however, Defendants do not seriously contend that this is the case, as there are almost twenty pages of factual allegations in Plaintiff's Amended Complaint wherein he asserts numerous violations of his rights.

Plaintiff alleges that Defendants are responsible for failing to provide him with adequate medical care and accommodation for his disability. It has been clearly

AO 72A
(Rev. 8/82)

established since at least 1976 that the government has an obligation to provide medical care to the incarcerated. Estelle v. Gamble, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). For the past thirty years, then, prison officials have been on notice that denying or delaying access to medical care and intentionally interfering with prescribed treatment violates the Eighth Amendment. Id. at 104-105, 97 S. Ct. at 291. See also Young v. City of Augusta, Ga., 59 F.3d 1160, 1169 n.17 (11th Cir.1995) ("The Eighth Amendment prohibits state caretakers from intentionally delaying medical care or knowingly interfering with treatment once prescribed."). Indeed, in the context of qualified immunity analysis, the Eleventh Circuit has explicitly held that "deliberate indifference to serious medical needs is a violation of clearly established law." Kimbell ex. rel Liddell v. Clayton County, Ga., 170 Fed. Appx. 663, 664 (11th Cir. 2006) (citing Behrens v. Pelletier, 516 U.S. 299, 313, 116 S. Ct. 834, 842, 133 L. Ed. 2d 773 (1996)). Furthermore, at the time of the events in question, it was clearly established law that prisoners retain First Amendment rights. Thornburgh v. Abbott, 490 U.S. 401, 407, 109 S. Ct. 1874, 1878, 104 L. Ed. 2d 459 (1989). Prisoners have a constitutional right to "adequate, effective and meaningful" access to the courts, including access to law libraries and supplies. Bounds v. Smith, 430 U.S. 817, 822, 97 S. Ct. 1491, 1495, 52 L. Ed.2d 72 (1977).

The violation of these standards is precisely what Plaintiff alleges. Plaintiff's factual allegations, when taken as true, establish constitutional violations under clearly established law that would have been clear to a reasonable officer at the time and under the circumstances in question. Accordingly, Defendants are not entitled to the defense of qualified immunity and their Motion is **DENIED** to that extent.

## VI. Respondeat Superior

Defendants assert that Plaintiff's claims are based solely on an impermissible respondeat superior theory of liability, because Plaintiff fails to allege that Defendants either personally participated in the alleged violations or that there is any causal connection between Defendants and the alleged violations. Conversely, Plaintiff alleges that he does claim that Defendants were aware of his complaints and failed to correct the alleged deprivations.

In section 1983 actions, liability must be based on something more than a theory of respondeat superior. Braddy v. Fla. Dep't of Labor and Employment Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. A "causal connection" may be established when the supervisor is aware of a "history of widespread abuse" and fails to correct the alleged violations. Id. Constitutional "deprivations that constitute widespread abuse sufficient to notify the supervis[or] must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." Id. Having actual notice of the alleged unconstitutional practices combined with a refusal to investigate or respond comprises such a causal connection.

Construing Plaintiff's claims in a light most favorable to him, it is clear that he alleges a causal connection between the individual Defendants' conduct and the alleged constitutional violations. Specifically, Plaintiff alleges a history of deprivations that, if true, would serve to put Defendants on notice of the need to correct the violations.

Accordingly, Plaintiff's claims survive Defendants' Motion to Dismiss on this point and to the extent it seeks dismissal on respondeat superior grounds, the Motion is **DENIED**.

## VII.   Statute of Limitations

Defendants allege that Plaintiff's claims against Augusta State Medical Prison and Defendants Walker, Brown, Donald, and Paris are barred by the applicable two-year statute of limitations.  Defendants assert that because the events giving rise to Plaintiff's claims against these Defendants occurred in 1996, eight years before Plaintiff named these Defendants, the claims fall outside the two-year period and must be dismissed.  Plaintiff asserts that the statute of limitations has not run on these claims because he actually alleges ongoing violations which began in 1989 and continue to the present day.

Plaintiff filed this cause of action pursuant to 42 U.S.C.A. § 1983.  Although § 1983 does not provide a specific statute of limitations, courts are to apply the most appropriate and analogous state statute of limitations in these type of civil rights actions. Burnett v. Grattan, 468 U.S. 42, 49, 104 S. Ct. 2924, 2929, 82 L. Ed. 2d 36 (1984).  The appropriate statute of limitations for this action, as determined by state law, is two years. Harding v. Straub, 490 U.S. 536, 538, 109 S. Ct. 1998, 2000, 104 L. Ed. 2d 582 (1989); O.C.G.A. § 9-3-33.   Determination of when the limitations period begins to run, however, is a governed by federal law. Rozar v. Mullis, 85 F.3d 556, 561 (11th Cir. 1996).  Generally, a cause of action accrues when the plaintiff knows or should know "(1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the injury." Chappell v. Rich 340 F.3d 1279, 1283 (11th Cir. 2003).

Under these guidelines, Plaintiff's claims which arose as early as 1989 would appear to be outside of the limitations period. However, Plaintiff's claims are in the nature of "continuing wrongs." Neel v. Rehberg, 577 F.2d 262, 264 (5th Cir. 1978) (refusal to provide medical treatment, shower, telephone, and visiting privileges to prisoner constitutes continuing wrong). Where a continuing wrong is involved, "the cause of action accrues, and the limitation period begins to run, at the time the tortious conduct ceases." Donaldson v. O'Connor, 493 F.2d 507, 529 (5th Cir. 1974). Plaintiff's allegations, therefore, which pertain to his alleged mistreatment at the state prisons and which allegedly began as early as 1989 and continue even to "present day", are not time-barred or limited by the statute of limitations. Furthermore, Plaintiff seems to assert claims against Augusta State Medical Prison that arose in 2005 and 2006, which would be within the limitations period. Plaintiff should not prove damages for any conduct which arose more than two years prior to his bringing the particular claim, unless the conduct is in the nature of a continuing violation. To the extent that Defendants seek dismissal of Plaintiff's claims based on the statute of limitations, their Motion is **DENIED**.

## VIII.  Court Order

Defendants move for dismissal on the basis of Federal Rule of Civil Procedure 41(b), asserting that Plaintiff has failed to comply with the Eleventh Circuit's judgment dated May 17, 2006. Defendants assert several ways in which Plaintiff allegedly failed to comply with the Eleventh Circuit's instructions:  (1) "fails to identify what specific conduct he alleges violates the Eighth Amendment *and is [also] actionable under 42 U.S.C. § 1983*"; (2) "fails to identify what specific conduct by Defendants, if any,

allegedly violates Title II of the ADA but does not violate the Eighth and Fourteenth Amendments"; and (3) fails to state what state actor committed which act that allegedly violated his constitutional rights." (Doc. No. 208, pp. 30-32).

Plaintiff contends that a proper reading of the Amended Complaint reveals that he did comply with the Eleventh Circuit's instructions. First, Plaintiff asserts that he brings claims for violation of the Eighth Amendment *pursuant* to 42 U.S.C. § 1983. Second, Plaintiff contends that his constitutional claims are incorporated into his ADA claims, to which independent conduct was also added, and that thus the conduct which is allegedly unconstitutional is also an alleged violation of the ADA.

> The May 17, 2006 judgment of the Eleventh Circuit directed Plaintiff to:
>
> specify on a claim-by-claim basis and in separate counts (1) the specific conduct he alleges violates the Eighth Amendment and is actionable under 42 U.S.C. § 1983; (2) to what extent the alleged conduct underlying Miller's constitutional claims also violates Title II of the ADA; (3) what specific conduct allegedly violates Title II of the ADA but does not violate the Eighth Amendment; (4) as to his Eighth Amendment claims under § 1983, whether the defendant Warden Sikes is sued individually or in an official capacity or both; and (5) as to his ADA claims, whether the clam is brought against defendant Sikes in his official capacity, the defendant State of Georgia, and/or the defendant Department of Corrections.

(Doc. No. 190, pp. 4-5). A fair reading of the Amended Complaint persuades this Court that Plaintiff has complied with these instructions.

Defendants' first enumeration of error as to how Plaintiff failed to comply with the instruction confuses the Eleventh Circuit's directions. Defendants contend that Plaintiff "fails to identify what specific conduct he alleges violates the Eighth Amendment *and is [also] actionable under 42 U.S.C. § 1983* as ordered in the Court's Order of May 17, 2006." (Doc. No. 208, p. 30). Defendants, however, misinterpret what the Eleventh Circuit required of Plaintiff. The first three instructions are aimed at sorting out what

specific conduct forms the basis of Plaintiff's claims under § 1983 as opposed to what conduct forms the basis of his claims under the ADA. As Plaintiff correctly asserts, he "brought claims of violations of the First, Eighth, and Fourteenth Amendments *pursuant to* 42 U.S.C. § 1983, which is the statute that provides the cause of action for violations of constitutional rights by persons acting under color of state law." (Doc. No. 211, p. 24). Thus, the point is not to identify conduct which violates a constitutional right *and/or* § 1983, because that conduct will be one in the same. The point, rather, is to identify what conduct violates the constitution, and *thus* § 1983, what conduct violates the ADA, and whether any of the same conduct allegedly violates *both* § 1983 and the ADA.

Pursuant to these instructions, Plaintiff has identified the conduct that he alleges violates the Eighth Amendment and is therefore actionable under § 1983. See Doc. No. 198, pp. 14-16). Plaintiff has also identified that all of his constitutional claims are incorporated into his ADA and RA claims. See Doc. No. 198, pp. 19-22. Thus, according to Plaintiff, all of the conduct which allegedly violates the Eighth Amendment under § 1983 also forms the basis of the ADA and RA claims. Finally, Plaintiff identified additional conduct apart from his §1983 claims that allegedly violates the ADA or RA. See Doc. No. 198, pp. 20, 22. It is now sufficiently clear which conduct forms the basis of which claim, and Defendants' contention to the contrary is without merit.

Defendants also contend that Plaintiff "fails to state what state actor committed which act that allegedly violated his constitutional rights as required by the court." (Doc. No. 208, p. 31). Upon review of the Eleventh Circuit's judgment, the requirement to which Defendants refer cannot be identified. The remaining instructions of the Eleventh Circuit have been followed by Plaintiff. Plaintiff identified that "[a]ll of the individual

defendants (the 'Section 1983 Defendants') are sued in both their official and individual capacities, except for the individuals who are former GDOC and prison officials, who are sued only in their individual capacities." (Doc. No. 198, p. 4). Though Plaintiff could certainly have more clearly answered this inquiry, apparently Defendant Sikes, being a former GDOC and prison official, is sued in his individual capacity only. Furthermore, as to his ADA claims, Plaintiff refers to the "ADA Defendants" as the "GDOC, GSP and ASMP (together with the official-capacity Defendants)." Thus, from this it can be gleaned that only these institutional or entity Defendants, and not Defendant Sikes in any capacity, are the parties against whom the ADA claim is brought. Accordingly, the pending Eighth Amendment and ADA claims against Sikes in his official capacity are **DISMISSED**. Beyond that, to the extent Defendants move for dismissal under Rule 41(b), their Motion is **DENIED**.

## IX.    Service of Amended Complaint

A prisoner proceeding in a civil action against officers or employees of government entities must comply with the mandates of the Prison Litigation Reform Act, 28 U.S.C. §§ 1915 & 1915A. 28 U.S.C. § 1915A requires a district court to screen the complaint for cognizable claims before or as soon as possible after docketing. The court must dismiss the complaint or any portion of the complaint that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1) and (2).

In <u>Mitchell v. Farcass</u>, 112 F.3d 1483, 1490 (11th Cir. 1997), the Eleventh Circuit interpreted the language contained in 28 U.S.C. § 1915(e)(2)(B)(ii), which is nearly

identical to that contained in the screening provisions at § 1915A(b). As the language of § 1915(e)(2)(B)(ii) closely tracks the language of Federal Rule of Civil Procedure 12(b)(6), the court held that the same standards for determining whether to dismiss for failure to state a claim under Rule 12(b)(6) should be applied to prisoner complaints filed pursuant to § 1915(e)(2)(B)(ii). Mitchell, 112 F.3d at 1490. The court may dismiss a complaint for failure to state a claim only where it appears beyond a doubt that a *pro se* litigant can prove no set of facts that would entitle him to relief. Hughes v. Rowe, 449 U.S. 5, 10, 101 S. Ct. 173, 176, 66 L. Ed. 2d 163, 169-70 (1980); Mitchell, 112 F.3d at 1490.

As previously discussed, Plaintiff's Amended Complaint alleges Eighth Amendment claims based upon the alleged deprivation of his serious medical needs as a wheelchair-bound paraplegic, and upon the alleged deficient accommodation of his disability. Plaintiff also states a cognizable claim that his Fourteenth Amendment right to equal protection of the laws has been violated, contending that prison officials have denied him privileges because of his handicap. Plaintiff additionally states a claim that Defendants have taken action against him in retaliation for his having filed complaints and lawsuits, and have interfered with his access to the courts, all in violation of his First Amendment rights.

Plaintiff states a cognizable claim that he has been denied services and activities by reason of his disability in violation of Section 504 of the Rehabilitation Act, but only to the extent that he challenges conduct *other than* the denial of medical treatment. This is because the Rehabilitation Act requires that a person be denied a program or activity which they are "otherwise qualified" to receive, and because the Rehabilitation Act is

intended to ensure that handicapped individuals are not denied access to programs provided to non-handicapped persons, courts hold that the "otherwise qualified" criteria cannot be meaningfully applied to a medical treatment decision. Schiavo ex rel Schindler v. Schiavo, 358 F. Supp. 2d 1161, 1166 (M.D. Fla. 2005). See also United States v. University Hosp., State University of New York at Stoneybrook, 729 F.2d 144, 156 (2d Cir. 1984) ("section 504 prohibits discrimination against a handicapped individual only where the individual's handicap is unrelated to, and thus an improper consideration of, the services in question . . . where medical treatment is at issue, it is typically the handicap itself that gives rise to, or at least contributes to, the need for services.") Accordingly, Plaintiff fails to state an RA claim based on the denial of medical treatment. He does, however, state an RA claim based on the alleged denial of the other provisions and activities. (Doc. No. 198, pp. 20-21).

Finally, Plaintiff states a claim for violations of Title II of the ADA by acts of discrimination and retaliation. (Id. at 21-23). As previously discussed, the parties shall have a future opportunity to address whether Title II exceeds Congress's enforcement power, but Plaintiff's allegations themselves are sufficient to state an ADA claim.

Plaintiff's Amended Complaint, when viewed in a light most favorable to him, arguably states claims for relief pursuant to 42 U.S.C. §1983, the ADA, and the RA, against the named Defendants. Counsel for the existing Defendants shall apprise the Court within twenty (20) days as to whether they will accept service on behalf of Defendants named in Plaintiff's Amended Complaint, or whether service by the United States Marshal upon these individuals shall be necessary.

## CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part. To the extent that Plaintiff asserts ADA or RA claims against the individual Defendants in their individual capacities, or § 1983 claims for damages against the state Defendants or the individual Defendants in their official capacities, Defendants' Motion is **GRANTED** and these claims are **DISMISSED**. In all other respects, Defendants' Motion is **DENIED**.

The Court hereby converts the remainder of Defendants' Motion to Dismiss into a Motion for Summary Judgment as it pertains to three issues: (1) whether Plaintiff exhausted his administrative remedies as required by the PLRA; (2) whether Plaintiff can show "actual injury" resulting from his access to courts claim; and (3) whether Plaintiff's claims are barred by res judicata. The parties shall have twenty (20) days from the receipt of this Order to file any desired additional documents on these issues.

So **ORDERED** this _24th_ day of July, 2007.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE