IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

TRACY MILLER,

    Plaintiff,

vs.

RONALD KING; JOHNNY SIKES;
THE GEORGIA DEPARTMENT OF
CORRECTIONS; THE STATE OF
GEORGIA; HUGH SMITH, Warden;
STEVE ROBERTS; DR. CAROLYN
MAILLOUX; LISA WATERS JOHNSON;
VICTOR L. WALKER; DENNIS
BROWN; JAMES DONALD;
JOSEPH PARIS; GEORGIA
STATE PRISON; and AUGUSTA
STATE MEDICAL PRISON,

    Defendants.

CIVIL ACTION NO.: CV698-109

## ORDER

On September 21, 2009, the undersigned entered an Order granting in part and denying in part Defendants' Motion for Summary Judgment. Defendants filed a Motion for Reconsideration of that Order, Plaintiff responded, and Defendants filed a Reply. Defendants raised two (2) issues in their Motion, which the undersigned now addresses.

I. **Exhaustion**

Defendants contend that Plaintiff failed to exhaust his administrative remedies regarding events outlined in his Amended Complaint which allegedly occurred while he was housed at Augusta State Medical Prison ("ASMP"). Defendants assert that they moved to dismiss Plaintiff's Complaint based upon Plaintiff's failure to exhaust his administrative remedies pursuant to the Americans with Disabilities Act ("ADA"), which is a "separate and distinct" issue from whether Plaintiff exhausted his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"). Defendants assert that the Court, in granting their Motion to Withdraw, mistakenly concluded that they had withdrawn all exhaustion defenses in their Motion for Summary Judgment. However, Defendants contend, they only withdrew the exhaustion defense as to Plaintiff's ADA claims.[1]

Defendants allege that Plaintiff never filed a grievance regarding his allegations in his Complaint and Amended Complaint for events which allegedly occurred at ASMP. Defendants aver that Plaintiff filed five (5) grievances regarding events which allegedly occurred while he was housed at ASMP, but none of the grievances involved issues of medical care or housing accommodations. Defendants assert that the grievances Plaintiff filed at ASMP prior to filing his Amended Complaint dealt with alleged assault issues and not getting a sack lunch. Defendants also assert that the grievances Plaintiff filed in 2008 while he was housed at ASMP were never appealed, and, thus, Plaintiff did

---

[1] It was not abundantly clear upon review of Defendants' Motion to Withdraw that it was the intent of Defendants to withdraw their Motion for lack of exhaustion only as to Plaintiff's ADA claims. While Defendants mention the ADA in paragraph 1, in the next paragraph, Defendants state they are addressing issues set forth in Plaintiff's original Complaint and Amended Complaint in 1996, 2005, and 2006, and one complaint that likely predated 1996. Given Defendants' clarification in their Motion for Reconsideration, the Court will address Defendants' original Motion on exhaustion grounds.

not exhaust his administrative remedies. Defendants allege that Plaintiff knew how to use the grievance procedure based on the filing of five (5) grievances at ASMP, as well as the 226 grievances he filed while he was housed at GSP. Defendants contend that Plaintiff's claim that he was prohibited from filing grievances because he was moved so often is without merit, as Plaintiff has the availability of filing an emergency grievance or filing an out-of-time grievance for good cause shown. Defendants aver that Plaintiff's claims against ASMP and Defendants Victor Walker, Dennis Brown, Wayne Garner, James Donald, and Joseph Paris should be dismissed because Plaintiff did not exhaust his administrative remedies as to these Defendants.

Plaintiff contends that, to the extent he did not file any administrative remedies regarding his claims arising out of ASMP, it was because he was denied the ability to file grievances or to have meaningful access to the grievance process while he was housed at ASMP. Plaintiff asserts that his counselor would refuse to give him a grievance form, which cut off his ability to file a grievance. Plaintiff also asserts that an administrative remedy must be available to a prisoner before he is required to exhaust those administrative remedies. Plaintiff alleges that, even when he was able to get a grievance form, his grievances were often denied for "a variety of contradictory and suspect reasons," (Doc. No. 264, p. 4), such as being told he could only grieve one "issue" in a single grievance even though he was attempting to show that he was being discriminated against in a variety of different ways. However, Plaintiff asserts, if he tried to file a grievance for each instance of discrimination, he was told that he could file only one (1) grievance a week. Plaintiff also asserts that he was informed that complaints about being housed in non-accommodating cells were non-grievable because these

complaints concerned housing assignments. Plaintiff further asserts that, given the one (1) grievance per week limitation, he would have procedurally defaulted on those issues. Plaintiff contends that the fact that he filed over 200 grievances while he was housed at GSP and allegedly only 5 or 6 grievances while he was housed at ASMP supports a finding that he can and does exhaust administrative remedies when they are available to him. Plaintiff alleges that Defendants did not provide the Court with copies of all of the grievances described in the affidavits in support of their Motion. Plaintiff also alleges that the affidavit Defendants submitted is inaccurate and misleading. Finally, Plaintiff alleges that it is impossible to determine whether he exhausted his administrative remedies on the 1995 grievances because, when the Georgia Department of Corrections revised its grievance policy in 2004, the original paper grievances predating the revision were destroyed.

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. (internal punctuation and citation omitted). A judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id.

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). 42 U.S.C. § 1997e(a)

states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523. The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007). It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

While "available administrative remedies" does not mean that the remedies must be adequate, it does mean that the exhaustion process actually must be available to the inmate. Alexander v. Hawk, 159 F.3d 1321, 1326 (11th Cir. 1998). Indeed, in determining whether a plaintiff has exhausted his administrative remedies, a court does "not review the effectiveness of those remedies, but rather whether remedies were *available* and exhausted." Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999) (emphasis added). There is little case law addressing what constitutes "available" administrative remedies. In Hall v. Richardson, 144 F. App'x 835 (11th Cir. 2005), the Eleventh Circuit chose not to address the issue of whether the denial of grievance forms

by jail officials would render administrative remedies "unavailable." 144 F. App'x at 836. Instead, that court merely noted that "[t]he Supreme Court has explained that 'available' refers to 'the possibility of some relief for the action complained of.'" Id. (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)). Several courts have found rare circumstances in which the otherwise mandatory exhaustion requirement may be excused or in which administrative remedies are not truly "available" within the meaning of the Prison Litigation Reform Act ("PLRA"). See, e.g., Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (holding that inmate's claims were improperly dismissed where district court failed to consider allegations that inmate was denied grievance forms); Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004) (finding that exhaustion defense is estopped if prison officials hinder inmate in exhausting administrative remedies); Aceves v. Swanson, 75 F. App'x 295, 296 (5th Cir. 2003) (finding remedies are "unavailable" where prison officials refuse to give inmate grievance forms despite inmate's requests).

Defendants submitted the Affidavit of Jackie Morgan ("Morgan"), who was the chief counselor at ASMP from September 16, 2004, until April 1, 2008, (Doc. No. 255-3), and Plaintiff submitted his own Affidavit. (Doc. No. 265). In her Affidavit, Morgan sets forth the grievance procedure which was in place in 2004.[2] Morgan states that, according to Plaintiff's grievance history, he filed six (6) formal and seven (7) informal grievances complaining about events which allegedly occurred at ASMP. Morgan also states that, during the relevant period, Plaintiff filed the following grievances: Number 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, filed September 29, 2005; Number 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, filed February 2, 2006; and Number 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, filed April 28, 2008. (Doc. No. 255-3, ¶ 10). Morgan also

---

[2] In the undersigned's estimation, the previous version of the grievance procedure is immaterial to the issue before the Court. Any exhaustion issue that should have been raised prior to the appeal in this case should have been raised on a previous occasion, i.e., prior to 2004.

states that Plaintiff initiated informal grievances on September 26, 2005, September 28, 2005, February 25, 2008, February 28, 2008, March 5, 2008, and March 16, 2008. Morgan declares that Plaintiff alleged he was subjected to uses of force by prison staff in Grievance Numbers 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 and 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, and these grievances were sent to Internal Investigation for review. (Id. at ¶¶ 14-15). Morgan also declares that Plaintiff filed Grievance Number 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 alleging that he was placed in a non-wheelchair accessible cell without a commode or a medically elevated bed with handrails. According to Morgan, this grievance was unresolved as of May 15, 2008 (the date she signed her Affidavit). (Id. at ¶ 30). Morgan states that Plaintiff "has never filed a formal grievance alleging he had been denied or did not receive proper prescribed medications or proper medical treatment." (Id. at ¶ 22). Morgan also states that the informal grievances Plaintiff filed were rejected for various reasons, including containing more than one (1) issue, filing more than one informal grievance a week, or being in violation of the Standard Operating Procedure ("SOP"). Morgan further states that Plaintiff did not resubmit an informal grievance or a formal grievance after he was notified of these rejections. (Id. at ¶¶ 24-29).

In his Affidavit, Plaintiff declares that he has filed at least 11 grievances regarding medical treatment and/or accessibility issues since the 2004 changes to the SOP, "in spite of attempts by prison staff to prevent [him] from doing so." (Doc. No. 265, ¶ 10). Plaintiff states that he filed an informal grievance on September 5, 2008, in which he alleged that he had been denied the opportunity to bathe or shower and to have yard call, church privileges, cold food, wheelchair accessible space, medical care and treatment, law library access, and legal materials. Plaintiff states this informal grievance

was received on September 8, 2005, and was unresolved, which denied him the opportunity to pursue a formal grievance. (Id. at ¶ 11). Plaintiff also states that he filed a formal grievance on September 28, 2005, after he filed an informal grievance on the same issues, and that he grieved about retaliation issues, the denial of appropriate recreation, clothing, or bedding, disability discrimination, and medical and accessibility aspects of his treatment; this grievance was denied. (Id. at ¶ 12). Plaintiff further states that he filed a formal grievance on February 1, 2006, which referenced disability discrimination, refusal to provide medical treatment, and taking away medical devices. Plaintiff declares that, before he could pursue these grievances fully, he was transferred to GSP on February 24, 2006. Plaintiff also declares that, up until 2008, whenever he was transferred away from a prison, he was refused the necessary forms to pursue a grievance or appeal regarding the former prison. (Id. at ¶¶ 14-15). Plaintiff states that the grievance procedure given to inmates could be confusing, especially regarding the resolution of complaints without filing an informal grievance. Plaintiff also states that his counselor often refused to provide him with a grievance form because it was necessary to have an informal investigation of his complaint before he was allowed to file even an informal grievance. Plaintiff declares that he did not understand how it was possible to investigate his complaint in the absence of anything written on the issue, and his counselor refused to give him an informal grievance form because the warden had not informally investigated Plaintiff's complaint. (Id. at ¶ 17). Plaintiff states that his counselor often refused his requests for grievance forms because the issue was not grievable, Plaintiff "was not entitled to the form for some other specified reason," or that he would be placed in isolation or receive some other type of punishment if he filed a

grievance. (Id. at ¶ 18). Plaintiff also states that, even when he was provided with the forms necessary to pursue a grievance, the grievance was rejected for "bogus" reasons, such as limiting grievances to one (1) issue, even though the SOP did not define what was an "issue". (Id. at ¶ 19). Plaintiff states that he attempted to address a single issue in his grievances—discrimination against him based on his disability, which manifested itself by the receipt of disparate treatment and retaliation, the failure to provide him with medical treatment and devices, the failure to provide wheelchair accommodating facilities, and "other related issues . . . raised in [his] Amended Complaint[ ]—but he was told he raised more than one (1) issue in the same grievance. (Id. at ¶ 20). Plaintiff declares that he was allowed to file only one (1) grievance per week and to have two (2) pending grievances at one time. According to Plaintiff, it would take at least a year for a grievance to be resolved. Plaintiff states that, because he is limited as to the number of grievances he could file or have pending at a time and because he had to file a grievance within 10 days of the incidents, he would be barred from filing a grievance covering each of the incidents he believed demonstrate prison official's discrimination against him. Moreover, Plaintiff states he has filed grievances on individual examples of discrimination and retaliation, only to be told the issues are non-grievable. For instance, Plaintiff states he filed a grievance alleging prison officials retaliated against him by filing false disciplinary reports and by failing to accommodate his medical needs and wheelchair, and this grievance was rejected on October 11, 2005, because it concerned disciplinary issues and housing assignment complaints.

A review of the evidence before the Court indicates there is a factual dispute as to whether the administrative remedy procedures were "available" to Plaintiff in order for

him to file informal and formal grievances and appeals of the denials of any grievances he was able to file pertaining to his confinement at ASMP. While the undersigned finds Plaintiff's claim that the grievance procedure was confusing somewhat specious, the undersigned can not ignore Plaintiff's assertion that he was outright denied access to the grievance procedures on several occasions. Defendants submitted no documentation in support of their exhaustion defense other than two (2) affidavits and the applicable SOP, which the undersigned determines is insufficient to prove Defendants' entitlement to the affirmative defense of failure to exhaust administrative remedies. This portion of Defendants' Motion is **DENIED**.

## II. Collateral Estoppel

Defendants state that the Court applied Georgia law to the question of *res judicata* and claim preclusion but did not address the application of collateral estoppel, or issue preclusion, to Plaintiff's cause of action. Defendants assert that the Court should apply federal common law rather than Georgia law for collateral estoppel issues, as jurisdiction in this case is based on federal question jurisdiction. Defendants request that the Court reconsider its Order regarding the preclusive effect of Plaintiff's prior actions. Defendants contend that Plaintiff is precluded from relitigating issues against GSP that this Court already decided. Defendants asserts that Plaintiff has already litigated and lost on all issues in his Amended Complaint arising out of GSP, specifically: the denial of his leg brace and orthopedic shoes; the denial of medical treatment, supplies, and physical therapy; the failure or refusal of Department of Corrections' employees to transfer him to an accommodating facility; retaliation through placing him in disciplinary segregation, confiscation of his medical devices, and denying

him access to recreation, the law library, church services, and other privileges; the unavailability of a wheelchair-accessible van; discrimination by DOC employees based on his disability; and the accommodation of his conditions of confinement at GSP for his disability.

Plaintiff disputes that Defendants raised an issue preclusion defense for the Court's consideration, and, even if they had, that defense has been waived. In addition, Plaintiff alleges that this defense fails on the merits. Plaintiff contends that, as with the State's claim preclusion argument, at best, the only issues precluded by his prior litigation were the specific factual issues raised as of the date of his prior complaints. Plaintiff avers that he alleges Defendants engaged in an ongoing pattern of deliberate indifference, discrimination, and retaliation, and this Court's previous finding that he did not allege facts in support of those claims in 1997 would not bar such issues from being litigated in this suit, particularly in light of his Amended Complaint being filed in 2006. Plaintiff requests that the Court clarify its prior ruling on this issue so that the parties can be guided in completing discovery.

Defendants are correct that this Court did not address the application of collateral estoppel, or issue preclusion. However, the undersigned did not address the application of this doctrine because Defendants did not ask that the Court do so in its original Motion. ("In keeping with this more modern analytical mode, whenever *res judicata* is used herein, the Defendant is referring to claim preclusion.", Doc. No. 255, p. 17). Additionally, Defendants never raised *res judicata* prior to their Motion for Summary Judgment which was filed on May 16, 2008, (see Doc. Nos. 58, 75, and 117),

and allowing Defendants to raise issue preclusion in the present Motion (which is at least their third bite at the same apple) is patently unfair to Plaintiff.

However, the Court stands corrected as to the proper application of law in determining the preclusive effect of a federal judgment, as Defendants note. Under federal common law, a party's second action is barred under *res judicata* if all four elements are present: "(1) a final judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) the parties, or those in privity with them, must be identical in both suits, and (4) the same cause of action must be involved in both cases." Hart v. Yamaha-Parts Distributors, Inc., 787 F.2d 1468, 1470 (11th Cir. 1986). In contrast, collateral estoppel "is not limited to parties and their privies. A defendant who was not a party to the original action may invoke collateral estoppel against the plaintiff." Id. at 1473.

In accordance with applicable law, Plaintiff is barred from pursuing any cause of action against any named Defendant which this Court (or the Eleventh Circuit on appeal) decided on the merits in Case Numbers CV697-144 and CV699-83. However, Plaintiff is not barred from pursuing claims that are based on events he contends occurred after the final judgments were entered in Case Numbers CV697-144 and CV699-83, even if some of the Defendants in those cases are the same as some of the Defendants in this case or the causes of action may fall under the same general legal rubric. The parties are directed to Exhibit A attached to Defendants' Motion for Reconsideration for guidance on this issue.

Defendants' Motion for Reconsideration is **GRANTED**, to the extent the Court revisited legal principles applicable to the doctrine of *res judicata*. Otherwise,

Defendants' Motion is **DENIED**. Plaintiff's Cross-Motion for Clarification is **GRANTED**, as indicated herein.

**SO ORDERED**, this 10th day of November, 2009.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE